IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| DAMON'S INTERNATIONAL, INC., | : | Bankruptcy No. 09-27920-JAD |
| DAMON'S RESTAURANTS, INC., | : | Bankruptcy No. 10-20565-JAD |
| DAMON'S RESTAURANTS OF AMERICA, INC., | : | Bankruptcy No. 10-20567-JAD |
| DAMON'S OF NEW PHILADELPHIA, INC., | : | Bankruptcy No. 10-20568-JAD |
| DAMON'S OF LEXINGTON PARK, INC. | : | Bankruptcy No. 10-20569-JAD |
| DAMON'S MANAGEMENT, INC., | : | Bankruptcy No. 10-20570-JAD |
| | : | |
| Debtors. | : | Chapter 11 |
| _____X | : | |
| | : | |
| JEFFREY J. SIKIRICA, CHAPTER 11 TRUSTEE | : | Adversary No. 12-02392-JAD |
| FOR DAMON'S INTERNATIONAL, INC., et al., | : | |
| | : | |
| Plaintiff, | : | Doc. # 32, 33 |
| | : | |
| v. | : | |
| | : | |
| US FOODS, INC., | : | |
| | : | |
| Defendant. | : | |
| _____X | | |

**MEMORANDUM OPINION**

The matter before the Court is a *Motion to Dismiss* filed by the defendant, US Foods, Inc. This matter is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. For the reasons set forth more fully below, the *Motion to Dismiss* is denied, with the exception of the defendant's request to dismiss the plaintiff's claim pursuant to 11 U.S.C. § 502, which is granted. The plaintiff's claim under section 502(d) is dismissed without prejudice.

I.

The debtor, Damon's International, Inc. (the "Debtor"), filed a petition under chapter 11 of the bankruptcy code on January 29, 2010 (the "Petition

Date"). Plaintiff Jeffrey J. Sikirika was appointed as chapter 11 trustee (the "Trustee") on September 15, 2011.

On September 13, 2012, the Trustee initiated this adversary proceeding by filing a complaint (the "Original Complaint") against US Foods, Inc. (the "Defendant"), alleging that the Debtor transferred property interests to the Defendant on or within ninety days before the Petition Date. (Doc. # 1, p. 2, ¶ 10). The Original Complaint asserts causes of action for avoidance of transfers as preferences under section 547, avoidance of intentionally fraudulent transfers under section 548(a), avoidance of constructively fraudulent transfers under section 548(b), avoidance of post-petition transfers under section 549, recovery of avoided transfers under section 550, and disallowance of claims under section 502(d).

The Original Complaint seeks to avoid transfers made to the Defendant by the Debtor within ninety days of the Petition Date, defined as the "Preference Period." The transfers at issue (the "Transfers") are defined in the Original Complaint as "all transfers made by [the Debtor] of an interest of [the Debtor] in property to or for the benefit of Defendant during the Preference Period (whether such transfers are presently reflected in Exhibit 'A' or not)." (Doc. # 1, p. 3, ¶ 11).

Specifically, the Trustee argues that the Transfers are avoidable preferences pursuant 11 U.S.C. § 547, because "[t]he Transfers enabled Defendant to receive more than it would have received if (a) [Damon's Restaurants, Inc.'s] bankruptcy was a case under Chapter 7 of the Bankruptcy

Code, (b) the Transfers had not been made, and (c) [the] Defendant had received payment of its claim to the extent provided by the provisions of the Bankruptcy Code." (Doc. # 1, p. 3, ¶ 17). The Trustee asserts in the alternative that that Transfers constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548, because "[t]he Transfers were made with the actual intent to hinder, delay, or defraud an entity to which [the Debtor] was or became, after the date of the Transfer, indebted." (Doc. # 1, p. 4, ¶ 22). In support of this allegation, the Trustee asserts that the Debtor "received less than a reasonably equivalent value in exchange for the Transfers, and (i) [the Debtor] was insolvent on the date the Transfers were made, or became insolvent as a result of such Transfers; (ii) [the Debtor] was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with [the Debtor] was an unreasonably small capital; or (iii) [the Debtor] intended to incur, or believed that it would incur, debts that would be beyond [the Debtor's] ability to pay as such debts matured." (Doc. # 1, p. 4, ¶ 23).

On March 15, 2013, the Defendants filed a motion to dismiss the adversary for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (See Doc. ## 15, 16). On April 8, 2013, the parties filed a stipulated agreement to extend time to amend, wherein the Trustee asserted a right pursuant to Fed. R. Civ. P. 15, Fed. R. Bankr. P. 7015, and Fed. R. Bankr. P. 9006(f) to amend the Original Complaint. (See Doc. # 24, p. 1). By order dated April 12, 2013, the Trustee was permitted to file an

-3-

amended adversary complaint by April 29, 2013. (See Doc. # 26). The Trustee filed its amended complaint (the "Amended Complaint") on April 29, 2013. (See Doc. # 29). The Amended Complaint alleges additional facts to support the preferential and fraudulent transfer claims, including the payee name for the Transfers and the method of transfer by ACH debit (*id.* at ¶ 10) and the names of restaurants owned by the Debtor which allegedly received food shipments that were invoiced after shipment (*id.* at ¶ 14). The Amended Complaint also specifies that the Transfers were made "on account of an antecedent debt billed under the name of [the Debtor] after receipt of the food shipment invoices from the Defendant for the restaurants" (*id.* at ¶ 14), and asserts that the insolvency allegation is "based on the amount of pre-petition claims filed and owing" (*id.* at ¶ 15). The Amended Complaint does not include a claim for intentional fraudulent transfer.[1]

On May 13, 2013, the Defendant filed a motion to dismiss the Amended Complaint (the "Motion to Dismiss"), arguing that the fraudulent transfer claims[2] in the Amended Complaint should be dismissed as time-barred or, in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] See also Doc. # 43, p. 6 n.6 ("The Amended Complaint does not assert a claim to avoid the transfers as having been with actual intent to hinder, delay or defraud creditors.").

[2] The Defendant is not contesting Count I of the Amended Complaint, which contains the Trustee's preferential transfer claim; counsel for the Defendant stated at a hearing held on June 17, 2013, "We think this case should move forward as a normal preference" case. (See Audio Recording of Hearing Held in Courtroom D, June 17, 2013, @ 10:11 am).

(Doc. ## 32, 33). Specifically, the Defendant argues that the Amended Complaint should be dismissed for the following reasons: (a) the Original Complaint did not put the Defendant on notice of any "wrong payor" fraudulent transfer theory,[3] so any claim under such a theory is time-barred; (b) the Trustee is also time-barred from alleging the "new transfers" included in the Amended Complaint; (c) to the extent that the Trustee's constructive fraudulent transfer claim is not time-barred, the Amended Complaint fails to state a claim for constructive fraudulent transfer; and (d) the Trustee's objection under section 502(d) is premature.

The Trustee filed a brief in opposition to the Motion to Dismiss on June 11, 2013. (Doc. # 45). A hearing on the matter was held on June 17, 2013. The matter is now ripe for decision.

II.

Pursuant to Federal Rule of Civil Procedure 8, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, a sufficiently pleaded claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

---

[3] The "wrong payor" theory is, in essence, that the Debtor paid for goods which were shipped to other third parties and for which other parties were obligated to pay. (See Doc. # 33, p. 12).

Fed. R. Civ. P. 8(a). See also Fed. R. Bankr. P. 7008(a). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

When presented with a motion to dismiss, courts should first separate the "factual and legal elements of a claim" and "accept all of the complaint's well-pleaded facts as true, but . . . disregard any legal conclusions," and "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has 'plausible claim for relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 201-211, (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). Accepting the Amended Complaint's well-pleaded facts as true, this Court determines that the facts alleged are sufficient to show that the Trustee has a plausible claim for relief under 11 U.S.C. §§ 547 and 548. With the exception of the Trustee's claim under 11 U.S.C. § 502, the Court finds the Amended Complaint satisfies Rule 8's notice pleading requirements and survives the Defendant's Motion to Dismiss. However, the Court agrees with the Defendant that the Trustee's section 502(d) claim is premature. Therefore, and for the reasons set forth more fully below, the Motion to Dismiss is granted in part and denied in part.

A.

The Defendant first argues that the "new theory of liability" the Trustee asserts in the Amended Complaint, which the Defendant refers to as the "wrong payor" fraudulent transfer theory, does not "relate back" to the Original Complaint, any therefore any claim made thereunder should be dismissed as time-barred. (Doc. # 33, pp. 12, 19). This Court finds this argument without merit, because the Defendant had notice of the Trustee's constructive fraudulent transfer claim, and the "new theory" arises out of the same transaction set out in the Original Complaint.

The Trustee is bound by 11 U.S.C. § 546 to file avoidance actions before September 15, 2012. See 11 U.S.C. § 546(a). The Original Complaint was timely filed on September 13, 2012, but the Amended Complaint was filed over one year past the Trustee's appointment, on April 29, 2013. Fed. R. Civ. P. 15 provides that an amended pleading can relate back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The Third Circuit has asserted that "[t]he touchstone for relation back is fair notice." Glover v. FDIC, 698 F.3d 139, 146 (3d Cir. 2012). "[O]nly where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." Id. (citing Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d. Cir. 2004)). "Conversely, amendments 'that significantly alter the nature of a proceeding by

injecting new and unanticipated claims are treated far more cautiously." Glover, 698 F.3d at 146 (citing United States v. Hicks, 283 F.3d 380, 388 (D.C. Cir. 2002)).

The Defendant argues that "[i]f the Court allows relation back here for the [Trustee]'s new-found 'wrong payor' fraudulent transfer theory, a whole new universe of facts will be necessary for [the Trustee] to prove up his section 548 cause of action and, conversely, having to defend 'wrong payor' fraudulent transfers will expand the universe of facts [the Defendant] must investigate to establish its defense." (Doc. # 33, p. 27). The Trustee argues in response that the Original Complaint put the Defendant on notice that "the Trustee was asserting [that the Debtor] did not receive reasonably equivalent value in exchange for the transfers made," and the "so called '[w]rong [p]ayor' theory of recovery amounts to an allegation that not only did [the Debtor] not receive reasonably equivalent value, it received no value. No value is a subset of less than reasonably equivalent value." (Doc. # 45, p. 7). This Court agrees with the Trustee that the Defendant was on notice that the Trustee was pursuing a fraudulent transfer claim, and the "wrong payor" theory relates back to such claim.

In Bensel, the court approved relation back of amendments that "restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading." Bensel, 387 F.3d at 310. The court also held, "[i]n essence, application of Rule 15(c) involves a search for a common core of

operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." Id. The amended complaint at issue in Bensel was determined to "merely expound[] upon and further detail[] the factual scenario and breach claims that were roughly sketched in [the] original [c]omplaint." Id. The original complaint outlined "in broad terms" the events surrounding an agreement between two parties and related arbitration proceedings, and included a general claim for breach, which the court found could "easily be read to encompass the more particularized claims" that appeared in the subsequently filed amended complaint. Id.

Similarly, in the instant case, the Original Complaint's claim for constructive fraudulent transfer encompassed the more particularized claim contained in the Amended Complaint. The Court first notes that the Original Complaint sufficiently outlined a claim for constructive fraudulent transfer. The Trustee alleged that the Debtor received less than a reasonably equivalent value in exchange for specific transfers made to the Defendant; the Trustee identified these Transfers by number, payment date, payee name, and payment amount; and the Trustee alleged that the Debtor was insolvent on the date the Transfers were made, or became insolvent as a result of such Transfers, or was or was about to engage in a business transaction with unreasonably small capital, or intended to incur or believed it would incur debts beyond its ability to pay as they became due. (See Doc. # 1). The Trustee did not "merely recite the statutory elements of section 548" as the Defendants argue, but clearly set

forth specific transfers identified by specific dates and allegedly made to the Defendant within the Preference Period for less than reasonably equivalent value. (Doc. # 33, p. 26). The factual allegations set forth in the Original Complaint sufficiently state a claim for relief for purposes of Fed. R. Civ. P. 8; when construed in the light most favorable to the plaintiff, they establish plausible grounds for a claim. Twombly, 550 U.S. at 556.

Thus, the Defendant was on notice that the Trustee sought to avoid transfers the Debtor made to the Defendant during the Preference Period and for which the Debtor received less than a reasonable equivalent value in exchange. Further, the Original Complaint encompasses the language the Trustee added to the Amended Complaint, which asserts that the Transfers were payments for food shipments invoiced to other parties and that the Debtor received less than a reasonably equivalent value in exchange "due to financial losses incurred by supporting Damon's of New Philadelphia, Inc." (Doc. # 33, ¶ 22). This is not an addition of a new or unanticipated claim drawing on a different universe of facts; rather, the Trustee is further detailing the factual scenario surrounding the specific Transfers identified in the Original Complaint.

The Defendant was sufficiently on notice that the Trustee sought to avoid certain transfers made to the Defendant by the Debtor and for which the Debtor did not receive reasonably equivalent value in return. The Court finds that the legal theory asserted in the Amended Complaint further details such a claim, and therefore relates back to the Original Complaint.

B.

Similarly, the Court also finds that the additional transfers specifically alleged in the Amended Complaint relate back to the Original Complaint. Paragraph 11 of the Original Complaint provides:

> Exhibit 'A' reflects [the Trustee]'s current knowledge of the transfers made to the Defendant during the Preference Period. During the course of this proceeding, [the Trustee] may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. [The Trustee]'s intention is to avoid and recover all such transfers, regardless of whether or not such transfers are presently reflected on Exhibit 'A'. Collectively, all transfers made by [the Debtor] of an interest of [the Debtor] in property to or for the benefit of Defendant during the Preference Period (whether such transfers are presently reflected in Exhibit 'A' or not) are referred to herein as the 'transfers'.

(Doc. # 1, ¶ 11). Exhibit A attached to the Original Complaint lists twenty seven transfers made to the Defendant, all identified by number, payment date, payee name, and amount, and all made within the Preference Period. (See Doc. # 1, Exhibit A).

The Amended Complaint also defines "Transfers" as "all transfers made by [the Defendant] of an interest of [the Defendant] in property to or for the benefit of Defendant during the Preference Period (whether such transfers are presently reflected in Exhibit 'A' or not)," and asserts that its "intention is to avoid and recover all such transfers, regardless of whether or not such transfers are presently reflected on Exhibit 'A'." (Doc. # 33, ¶ 11). The

Transfers identified in the exhibits attached to the Amended Complaint are also all within the Preference Period.

The Trustee argues that the language of the complaints which assert the Trustee's interest in pursuing all transfers made within the Preference Period sufficiently encompasses additional transfers not specifically identified. The Trustee cites to <u>In re McMullen Oil Company</u>, 251 B.R. 558, 577 (Bankr. C.D. Cal. 2000) to support its argument that a complaint's general allegation that unidentified checks are sought to be recovered is sufficient to put a defendant on notice that additional payments received are subject to recovery. The Court agrees with this argument and finds that the Defendant was on notice that any transfer received in the Preference Period may be subject to the Trustee's avoidance action. Not only are all specified Transfers within the Preference Period, but the Amended Complaint includes clearly and sufficiently notices the Defendant that all transfers made during the Preference Period are subject to recovery, whether or not specifically identified. Thus, all new transfers alleged in the Amended Complaint relate back to the Original Complaint.

C.

The Defendant also argues that, to the extent that Plaintiff's constructive fraudulent transfer claim is not time-barred, the Amended Complaint fails to state a claim. Specifically, the Defendant argues that the Trustee does not sufficiently plead the Debtor's insolvency and the time of the alleged Transfers nor plausibly allege that the Debtor received less than reasonably equivalent value in exchange.

Under 11 U.S.C. § 548, the Trustee may avoid any transfer of an interest of the Debtor in property, or any obligation incurred by the Debtor, that was made or incurred on or within two years before the Petition Date, if the Debtor:

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>     (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>     (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>     (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>     (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548. In order to survive the Motion to Dismiss, the Trustee's fraudulent transfer claim must set forth sufficient facts to show that the Trustee has a plausible claim for relief under to section 548. Because the Trustee alleges sufficient facts to support its claim that the Debtor made Transfers to the Defendant, for which the Debtor received less than a reasonably equivalent value in exchange, and while the Debtor was insolvent,

the Court finds that the Trustee has sufficiently pleaded its constructively fraudulent transfer claim.

First, the Trustee sufficiently alleges the Debtor's insolvency by asserting that the Debtor was insolvent at the time of the Transfers "based on the amount of pre-petition claims filed and owing." (Doc. # 29, ¶ 15). The Bankruptcy Code provides that an entity is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of — (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A). Furthermore, other provisions of the Bankruptcy Code outside of section 548 presume a debtor was insolvent at the time it allegedly made preferential transfers within the ninety-day prepetition window. 11 U.S.C. § 547(f); see also In re Allegheny Health, Educ. & Research Found., 292 B.R. 68, 77 (Bankr. W.D. Pa. 2003) ("(T)he Debtors are presumed, for purposes of § 547, to have been insolvent throughout the Preference Period. . . . Moreover, such presumption of insolvency under § 547(f) operates such that the Trustee has no obligation to come forward with evidence to demonstrate the Debtors' insolvency unless and until UCAC comes forward with some evidence to rebut such presumption."). The parties may address at trial whether this presumption should apply in the section 548 context.

The Defendant argues that the Trustee's insolvency claim is insufficient for purposes of rule 12(b)(6), because the Trustee has not "performed a

reconciliation" of the Debtor's claims to support its factual allegations. However, to survive a motion to dismiss, a plaintiff must state a plausible claim for relief, not prove all elements of his claim. The Trustee is not required to perform a reconciliation of claims or otherwise prove the Debtor's insolvency to survive the Defendant's Motion to Dismiss, but must sufficiently allege facts to support a plausible claim. Moreover, the Transfers at issue are those made during the Preference Period; a time during which the Debtor is presumed to be insolvent.

Thus, for purposes of Rule 12(b)(6), the Court finds that the Trustee sufficiently pleaded the Debtor's insolvency at the time of the Transfers.

D.

Second, the Trustee's allegations also gave sufficient notice to the Defendant that the payments were alleged to be in satisfaction of antecedent debt but received less than reasonably equivalent value in exchange. Whether the Debtor received reasonably equivalent value in exchange for the Transfers "is an issue of fact to be determined under the circumstances of the transfers," and the "factual basis for the allegations can be developed during discovery and if necessary presented at trial." In re Heilig-Meyers. Co., 297 B.R. 46, 54 (Bankr. E.D. Va. 2003); see also American Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp., 351 F.Supp.2d 79, 105 (S.D.N.Y.2004) ("Whether a transfer is for reasonably equivalent value depends on all the circumstances surrounding the transaction.").

In the Amended Complaint, the Trustee asserts that the Debtor "received less than a reasonably equivalent value in exchange for the Transfers due to financial losses incurred by supporting Damon's of New Philadelphia, Inc." (Doc. # 29, ¶ 22). Whether the Debtor did in fact suffer a loss in connection with the Transfers, and therefore whether the Debtor received less than a reasonably equivalent value, can and should be developed during discovery. Similarly, the circumstances surrounding the Master Distributor Agreement which the Defendant filed as an attachment to its Motion to Dismiss, and which the Defendant argues is a defense to the Trustee's allegation of reasonably equivalent value, is also an issue of fact to be developed through discovery. Whether the Master Distributor Agreement provides a satisfactory defense to the Trustee's sufficiently pleaded claim is a fact-specific claim appropriate for trial.

The Court therefore finds the Trustee's Amended Complaint provides sufficient notice to the Defendant that the Debtor received less than equivalent value in exchange for the Transfers. Accordingly, the Court finds that the Trustee's constructive fraudulent transfer allegations comply with the notice pleading requirement of Rule 8(a).

D.

Lastly, the Defendant argues that the Trustee's objection under section 502(d) should be dismissed as premature because there has been no finding of recoverability of any transfer. The Defendant argues that section 502(d) can only operate after a transferee's liability is reduced to a judgment, citing to

several cases in support, including In re Odom Antennas, Inc., 304 F.3d 705, 708 (8th Cir. 2003). The Court agrees with the Defendant that the Defendant must first be found liable for section 502(d) to operate, and dismisses this portion of the Trustee's Amended Complaint without prejudice.

Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). In Odom Antennas, the court asserted "the purpose of section 502(d) is to ensure compliance with judicial orders," and held that the statute's language "indicates section 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies." In re Odom Antennas, Inc., 340 F.3d 705, 708 (8th Cir. 2003) (citing In re Davis, 889 F.2d 658, 661-62 (5th Cir. 1989)); see also In re Parker N. Am. Corp., 24 F.3d 1145, 1155 (9th Cir.1994) ("Section 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfers. It does not compel the surrender, nor permit affirmative relief of any kind."). The Court agrees with the Defendant that the application of section 502(d) is premature since judgment has not yet been entered.

Because the Defendant has not yet been found liable, the Trustee cannot set forth a plausible claim under section 502(d); therefore, the Trustee's claim under section 502 is dismissed without prejudice.

### III.

In conclusion, the Court finds that the Amended Complaint sufficiently relates back to the Original Complaint, and denies the Defendant's argument that the Trustee is time-barred from asserting the "wrong payor" legal theory or alleging new Transfers made within the Preference Period. Further, the Court denies the Defendant's claim that the Amended Complaint fails to state a sufficient constructive fraudulent transfer claim, finding that the Trustee sufficiently alleged the elements of constructive fraudulent transfer, including the Debtor's insolvency and reasonably equivalent value. Lastly, the Court grants that portion of the Motion to Dismiss relating to the Trustee's 11 U.S.C. § 502(d) claim, and such claim is dismissed without prejudice. An appropriate order will be entered.

Date: October 22, 2013          /s/ Jeffery A. Deller
                                **JEFFERY A. DELLER**
                                United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Jeffrey J. Sikirica, Esq.
Michael Kaminski, Esq.
Jeffrey C. Hampton, Esq.
James H. Joseph, Esq.
Office of the United States Trustee

FILED

OCT 22 2013

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA